UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DUARNIS PEREZ,

                Plaintiff,

    v.                                1:05-cv-0401
                                      (LEK/DRH)

THE UNITED STATES OF AMERICA, *et al.*,

                Defendants.
_____

DUARNIS PEREZ,

                Plaintiff,

    v.                                1:07-cv-0821
                                      (LEK/DRH)

DANIEL J. FRENCH, *et al.*,

                Defendants.
_____

**MEMORANDUM-DECISION AND ORDER[1]**

        Plaintiff Duarnis Perez commenced the instant actions asserting various claims arising out of his arrest, prosecution, and conviction for unlawfully re-entering the United States. See Complaint in 1:05-cv-401 (Dkt. No. 1); Amended Complaint in 1:07-cv-821 (Dkt. No. 10). Presently before the Court are motions by Defendants United States of America, Daniel French, Sara Lord, Paul Silver, William Aubrey, Wesley Parsons, Gene Primomo and Alexander Bunin pursuant to Fed. R. Civ. P. 56 seeking dismissal of the claims against them in their entirety. The Court will consider the two related actions together.

---

[1] For printed publication in the Federal Reporter.

**I.        FACTS**

The following facts are taken from Defendants' Statements of Material Fact submitted pursuant to N.D.N.Y.L.R. 7.1(a)(3), which are deemed admitted because Plaintiff failed to submit a properly supported responsive statement of material facts. N.D.N.Y.L.R. 7.1(a)(3).

Plaintiff was born in the Dominican Republic in 1972. He came to the United States in October 1985. On April 13, 1988, Plaintiff's mother became a naturalized citizen of the United States. On April 11, 1995 and January 17, 1996, Plaintiff was convicted on drug-related charges in the State of Rhode Island. On March 20, 1996, Plaintiff was arrested on a drug-related charge. Based on Plaintiff's prior conviction, the Immigration and Naturalization Service ("INS") commenced deportation proceedings against Plaintiff. On January 2, 1996, Plaintiff conceded that he was a deportable alien. On June 28, 1996, an Immigration Judge ordered that Plaintiff be deported based upon his prior drug-related conviction and his concession that he was not a United States citizen. Plaintiff was deported on July 5, 1996.

In 1997, law enforcement officials became aware that Plaintiff had returned to the United States. On September 18, 1997, a federal warrant was issued for Plaintiff's arrest on a charge of unlawful re-entry after deportation in violation of 8 U.S.C. § 1325(a).

On February 21, 2000, Plaintiff attempted to enter the United States from Canada. Defendant Wesley Parsons, who was then an Immigration Inspector, performed the primary inspection of Plaintiff. During the primary inspection of Plaintiff at the border, Plaintiff presented an identification card identifying him as "Jose M. Cintron, DOB 12/10/86." Plaintiff informed immigration officials that he was a United States citizen born in Puerto Rico. Upon further

investigation, Plaintiff advised immigration officials that he had never been arrested, he had never been convicted, that he had no criminal record, and that he had never been deported from the United States.

After further questioning, Plaintiff stated that he was not a United States citizen and that he was Dominican. Plaintiff also acknowledged his true name, but continued to assert that he had never been arrested or deported from the United States. Upon processing Plaintiff's fingerprints, immigration agents learned of Plaintiff's criminal and immigration history. Parsons then handcuffed Plaintiff and turned him over to Defendant Senior Immigration Inspector William Aubrey. Aubrey interviewed Plaintiff, who admitted using false documents. Plaintiff also stated that he was a citizen of the Dominican Republic.

Aubrey contacted the Assistant United States Attorney on duty, Defendant Paul Silver, and advised him of the available facts. The Office of the United States Attorney in Albany, New York, through Defendant Silver, authorized Plaintiff's prosecution for unlawful re-entry after deportation. Accordingly, Aubrey brought Plaintiff before a United States Magistrate Judge and swore out a criminal complaint. Plaintiff was arraigned before a United States Magistrate Judge.

The Office of the Federal Public Defender (another Defendant in this action) was assigned to represented Plaintiff. Defendant Assistant United States Attorney Sara Lord was assigned to prosecute the matter.

On May 31, 2000, pursuant to a plea agreement, the United States Attorneys' Office filed a criminal information charging Plaintiff with violating 8 U.S.C. § 1325. On that same day, Plaintiff entered a plea of guilty. Thereafter, Plaintiff was sentenced by this Court to 57 months imprisonment. Plaintiff's conviction and sentence were affirmed on appeal to the Second Circuit Court of Appeals. The Supreme Court denied Plaintiff's petition for a writ of certiorari.

On September 9, 2002, the INS received an Application for Certificate of Citizenship from Plaintiff dated July 26, 2002. In the application, Plaintiff asserted derivative citizenship based upon his mother's naturalization. Plaintiff was issued a Certificate of Citizenship on July 2, 2004.

By letter dated November 1, 2004, Plaintiff presented to the United States Department of Justice a claim for damages under the Federal Tort Claims Act ("FTCA"). Plaintiff alleged that he was wrongfully prosecuted as an illegal alien.

In January 2005, Plaintiff filed a petition pursuant to 28 U.S.C. § 2255 seeking to vacate his conviction on the grounds that he was, in fact, a derivative citizen of the United States based upon his mother's naturalization. This Court granted the petition.

By letter dated January 22, 2007, Plaintiff presented a second claim for damages under the FTCA. Plaintiff again claimed being wrongfully prosecuted as an illegal alien.

Plaintiff then commenced the instant action asserting claims of false arrest, false imprisonment, malicious prosecution, legal malpractice, and violations of his rights of due process of law and the effective assistance of counsel.

Presently before the Court are Defendants' motions for summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of the claims against them in their entirety.

II.     **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In applying this standard,

courts must " 'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.' " Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir. 2001)).  Once the moving party meets its initial burden by demonstrating that no material fact exists for trial, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted). Rather, the non-movant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown, 257 F.3d at 251 (citation omitted).  Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

**III.     DISCUSSION**

    **a.     False Arrest/False Imprisonment**

Defendants move to dismiss the false arrest and false imprisonment claims on the ground that they acted with probable cause.  Probable cause is an absolute defense to a false arrest claim. Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2004).  Plaintiff's false arrest and false imprisonment claims must be dismissed because, as he concedes, the Government had probable cause to arrest him on charges of making false statements during the immigration inspection.  See Devenpeck v. Alford, 543 U.S. 146, 153-54 (2004).  Moreover, any claims for false arrest are time-barred because the instant action was commenced more than three years after the arrest.  Wallace v. Kato, 127 S. Ct. 1091, 1096 (2007).

Plaintiff's false imprisonment claim also is untimely. Plaintiff's claim accrued "when legal process was initiated against him. . . ." Wallace 127 S. Ct. at 1096. Because Plaintiff was arraigned before a magistrate judge in February 2000, but he did not commence the instant actions until 2005 and 2007 respectively, his claims are outside the applicable three year statute of limitations. To the extent that Plaintiff argues that the rule in Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994), should extend, or toll, the statute of limitations until the date his conviction was overturned, the Supreme Court rejected that argument in Wallace, 127 S. Ct. at 1100 ("We hold that the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."); see Elozua v. State of New Jersey, 2008 WL 370926, at *4 (D. N.J. Feb. 11, 2008) ("[I]f a plaintiff is not convicted at the time a Section 1983 claim accrues, the accrual of the claim is not deferred, and that plaintiff must file the claim within the applicable statute of limitations period."); McCloud v. Cutler, 2008 WL 906701, at *3-4 (E.D.N.Y. 2008); Mallard v. Potenza, 2007 WL 4198246 (E.D.N.Y. 2007). Accordingly, the false imprisonment claim is time-barred.

  **b.**  **Malicious Prosecution**

Defendants next move to dismiss Plaintiff's false arrest, false imprisonment, and malicious prosecution claims on the grounds that Defendants acted with probable cause.

Plaintiff's claims must be dismissed because Defendants acted with probable cause. Probable cause to arrest exists when "officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007). The "probable cause inquiry is based upon whether the facts known by the

arresting officer at the time of the arrest objectively provided probable cause to arrest." Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006). "Probable cause is to be assessed on an objective basis. 'Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.'" Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007) (quoting Devenpeck v. Alford, 543 U.S. 146, 152, 125 S. Ct. 588 (2004)). Where probable cause exists at the time of arrest, it continues to exist at the time of prosecution unless undermined "by the discovery of some intervening fact." Kinzer v. Jackson, 316 F.3d 139 (2d Cir. 2003).

      Here, there was probable cause to arrest Plaintiff. Plaintiff approached the border and presented suspicious documentation to immigration officials. When immigration officials questioned Plaintiff, he gave conflicting answers, thereby causing further suspicion. Ultimately, Plaintiff admitted to his real name and advised immigration officials that he was not a United States citizen. Defendants also learned of Plaintiff's criminal history and that he had previously been deported as an aggravated felon. There was no evidence available to Defendants that Plaintiff may have become a United States citizen derivative to his mother's naturalization. The available information gave immigration officials sufficient reason to believe that Plaintiff had committed, or was committing, the crimes of providing false information to an immigration official and illegally re-entering the United States.

      Although the immigration officials had sufficient reason to believe that Plaintiff had committed, or was committing, at least the crime of providing false information to an immigration official, and this finding is sufficient to establish the probably cause necessary to dismiss these claims, Plaintiff challenges the immigration official's sufficient reason to believe that he was illegally re-entering the United States. Plaintiff contends that the INS should have had some documentation in its files demonstrating that Plaintiff became a citizen derivative to his mother's naturalization. However,

he points to no evidence demonstrating that any of the named individual defendants were actually aware or reasonably should have been aware of any information suggesting that Plaintiff was, in fact, a United States citizen or even that any such documentation existed at the time.[2] See Savino v. City of New York, 331 F.3d 63, 73-74 (2d Cir. 2003) (stating that "[t]he collective knowledge doctrine . . . *cannot* be used to impute to an officer 'facts known to some [other] members of the police force which exonerate the arrestee.'") (quoting United States v. Valez, 796 F.2d 24, 28 (2d Cir. 1986)); see also Perez v. United States, 502 F. Supp.2d 301, 303 (N.D.N.Y. 2006) ("At the time of his conviction, Perez and the Government believed that Perez was a citizen of the Dominican Republic and, therefore, an alien."); Perez, 502 F. Supp.2d at 304 ("Prior to [2004] . . . Perez was not notified, in any manner, that he was a naturalized citizen; he had received no documentation concerning his citizenship status. . . . Even his mother did not know that he was a United States citizen.").

       The same reasoning applies to Plaintiff's prosecution.  At no time prior to Plaintiff's conviction was evidence discovered suggesting that he was a United States citizen.  There is insufficient evidence in the record from which it can reasonably be inferred that Plaintiff was prosecuted in the absence of probable cause.  To the contrary, his prompt guilty plea negates any suggestion that he was prosecuted without probable cause or that any of the individual defendants had

---

[2] Plaintiff fails to identify what document(s) would have alerted Defendants to his immigration status.  The record evidence demonstrates that, at the time, there was no documentation identifying Plaintiff as a United States citizen.  Any information concerning Plaintiff's immigration status (i.e. citizenship) would have to have been discerned by reviewing his mother's immigration file.  This would have further entailed making a the legal determination whether Plaintiff had obtained citizenship under 8 U.S.C. § 1432(a)(3) (2000) (repealed), which, in turn, would have required a factual resolution concerning whether Plaintiff's "paternity . . . ha[d] . . . been established by legitimation."  In light of Plaintiff's statement that he was from the Dominican Republic, there was no reason for Defendants to engage in such an analysis.

reason to believe that he was not actually guilty of the charged crime.[3] Plaintiff points to insufficient evidence suggesting that his prosecution was the result of fraud, perjury, the suppression of evidence, or other conduct undertaken in bad faith.

For the foregoing reasons, the false imprisonment and malicious prosecution claims must be dismissed.

The Court also notes that alternatively, based on the foregoing analysis, the individually named defendants would be entitled to qualified immunity because, in light of the information available to them, they had arguable probable cause to arrest Plaintiff. Moreover, Defendants French, Lord and Silver are entitled to absolute prosecutorial immunity with respect to the malicious prosecution claim. See Imbler v. Pachtman, 424 U.S. 409 (1976); Daloia v. Rose, 849 F.2d 74, 75 (2d Cir. 1988).

---

[3] Indeed, Plaintiff himself states that he did not believe he was a citizen of the United States at that time. See Defendants French et al. Stmnt. of Material Facts at ¶¶ 9, 14, 35; Def. French et al. App. at 85-87 (Affidavit of Plaintiff stating that he was unaware that he was a United States citizen) ("Although a United States citizen, I was unaware of this fact until my release from Immigration Custody in April of 2004. . . .").

The Court separately notes that, despite Plaintiff's representations in this case and in his prior habeas petition to this Court that he was unaware of his potential derivative citizenship until his release from custody in 2004, Plaintiff was in fact aware of at least potential United States citizenship when he applied for citizenship on July 26, 2002. In addition, Plaintiff noted on that application that his brother had applied for citizenship in Rhode Island, suggesting that at least his brother was previously aware of the process for obtaining derivative citizenship. Plaintiff also obtained an extract of his birth certificate in 1999, as would be needed for him to obtain citizenship under 8 U.S.C. § 1432(a)(3) (2000) (repealed) (requiring a factual resolution concerning whether Plaintiff's "paternity . . . ha[d] . . . been established by legitimation.").

     **c.**     **Claims Against Defendants Primomo, Bunin and the Federal Public Defender's Office**

Defendants Primomo and Bunin move to dismiss on the ground that they did not act under color of law and, alternatively, they are entitled to qualified immunity.

The Supreme Court has held that "a public defender does not act under color of . . . law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." Polk County v. Dodson, 454 U.S. 312, 325 102 S. Ct. 445 (1981). Although Plaintiff complains that these Defendants did not properly investigate his immigration status, their actions in this regard pertain to their professional representation of Plaintiff in connection with the charges against him. Because these Defendants were, at all times relevant hereto, performing their traditional function as counsel to Plaintiff, they were not acting under color of federal law. Accordingly, Plaintiff's constitutional claims against Defendants' Primomo and Bunin, and thus, also the Federal Public Defender's Office, must be dismissed.

     **d.**     **Claims Against the United States of America**

Defendant United States of America moves to dismiss on the grounds that the claims against it are untimely, that it is immune from suit, and that the actions of its agents were taken with probable cause.

Claims under the Federal Tort Claims Act ("FTCA") against the United States of America must be presented to the appropriate federal agency within two years after the claim accrues. 28 U.S.C. § 2401(b); Syms v. Olin Corp., 408 F.3d 95, 107 (2d Cir. 2005). For the reasons previously discussed, Plaintiff's false arrest and false imprisonment claims accrued on or before February 2000, when he was

arraigned. Plaintiff did not present his claim for damages under the FTCA until November 2004, more than two years later. Accordingly, these claims are time-barred.[4]

Plaintiff's remaining claim against the United States of America sounding in malicious prosecution must be dismissed because the United States has not waived its sovereign immunity with respect to such claims. 28 U.S.C. § 2680(h); Wilson v. United States, 959 F.2d 12, 14 (2d Cir. 1992). To the extent Plaintiff asserts a claim of malicious prosecution against the United States based on Defendant Aubrey's swearing out of a criminal complaint against Plaintiff,[5] this claim must be dismissed because: (1) the undisputed evidence before the Court is that Defendant Assistant United States Attorney Paul Silver made the decision to prosecute Plaintiff; and (2) for the reasons previously discussed, Aubrey filed the criminal complaint with probable cause.

### e. Supplemental Jurisdiction

Having dismissed all federal causes of action at this point in the litigation, the Court declines to exercise supplemental jurisdiction over any remaining state law claims.

---

[4] Plaintiff appears to concede that he does not have viable false arrest or false imprisonment claims against the United States of America. See Pl.'s Mem. of Law at 4 ("Thus, Perez's claim is essentially one for malicious prosecution.") (1:07-cv-821 Dkt. No. 59).

To the extent that Plaintiff contends that the rule in Heck serves to toll the statute of limitations, for the reasons previously discussed, this Court finds that the Supreme Court's holding in Wallace precludes application of Heck to extend, or toll, the statute of limitations on Plaintiff's FTCA claim.

[5] The United States has waived its sovereign immunity with respect to malicious prosecution claims arising out of the acts or omissions of investigative or law enforcement officers. 28 U.S.C. 2680(h).

## IV.     CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED**, that Plaintiff's Complaint in action 1:05-cv-401 (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that Plaintiff's Amended Complaint in action 1:07-cv-821 (Dkt. No. 10) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk close the files in these two matters; and it is further

**ORDERED**, that the Clerk serve a copy of this order on all parties.

**IT IS SO ORDERED.**

DATED:     June 09, 2008
           Albany, New York

Lawrence E. Kahn
U.S. District Judge